GheeN, J.
delivered the opinion of the co’urt.
This is an action of debt brought in the Bedford circuit court, by the plaintiffs against the defendant.
Upon the trial of the cause, the plaintiffs introduced and offered to read in evidence, an account for $95 35, proved by the oath of one of the plaintiffs before a justice of the peace for the county of Philadelphia, in the State of Pennsylvania, with the certificate of the clerk of the court of common pleas of said county, that J. D. Hoffman, before whom the probate was made, was an acting justice of the peace for the said county of Philadelphia. The defendant’s counsel objected to the said account and probate being read, which objection was sustained by the court, and the evidence was rejected.
*341 A verdict and judgment were rendered for the defendant, and the plaintiffs appealed to this court.
The question now is, whether this proven account was properly rejected.
By the act of 1819, ch. 25, sec. 1, it is provided, “That where any suit shall be hereafter brought on an account coming from any other county or State, with the affidavit of the plaintiff, and the certificate of a justice annexed to said account, and also the clerk’s certificate that said justice is an acting justice within his county, the justice of the peace or court, having cognizance of said suit, shall proceed to enter up judgment on said account and issue execution accordingly, unless the defendant shall on oath, deny the justice of said account.”
It is insisted, and so the circuit judge seems to have thought, that this act is to be construed in yari materia with the act of 1756, ch. 4, commonly called the book debt law, and that a proven account under this act of 1819, must be limited to the sum which the plaintiff may prove by his book, by virtue of the provisions of the act of 1756. But by a little attention to the provisions of the two acts, it will be manifest that the objects of the legislature were entirely different. By the book debt law, if the plaintiff shall declare on oath, that the matter in dispute is a book account, that he has no means to prove it but by his own oath, that it contains a true account of all his dealings, or the last settlement of accounts between them, that all the articles therein were Iona fide delivered; and that he had given all just credits; such book and oath shall be received as good evidence for the articles so proved to be delivered within two years before the action brought.
By the 6th section ofthis law, it is provided, that a plaintiff shall not be permitted to prove by his book, articles exceeding in value $75; and by the 4th section it is provided, that a defendant shall be at liberty to contest the plaintiff’s evidence, and oppose the same by other legal proofs.'
The whole provisions of this book debt law show, that it was intended to afford mechanics and shop-keepers, the means of collecting their small accounts, where there was no witness by whom they could be proved. For the amount limited, it *342 would afford ample remedies for persons of this class; for where the dealing would exceed the amount of $75 a witness could most usually be found to prove some part of it. When thus proved by the book it becomes (to use the language of the act) good evidence; and so strong did they suppose they were making the proof, that they deemed it necessary in the 4th section to provide, that the defendant might be permitted to oppose the same by other legal evidence. To make a man a witness thus in his own case, so that unless the defendant could establish by other legal evidence, that the work was not done, or the articles were not delivered, the plaintiff’s oath should be the sole ground of a judgment in- his favor, was a dangerous extension of the law of evidence. It was very important, therefore, to limit the amount, to which such proofs might be made, and the time within which a claim that was to be thus supported, should be brought forward.
But the provisions of the act of 1819 are very different, and they were enacted for a very different object. Our migratory population was constantly presenting cases where debtors and creditors became dispersed in different counties and States; and although a creditor might have witnesses to prove his account, yet the distance was often such, as that the troubleand expense of suing the debtor at a distance, and then continuing the cause and taking the depositions of witnesses, would be so great that the creditor would save money by giving up the debt. To obviate this mischief, and to afford the creditor an easy and cheap means of collecting his debts, where they wereyustly due and no real defence existed, this act of 1819-was passed.
By ch. 27, sec. 4, of the same year, it is provided, that a party pleading non est factum to, (or more correctly, denying the execution of) any promissory note, bill of exchange, &c., should make affidavit of the truth of his plea. The act under consideration only intended to- put a proven account upon the same footing. If it be not just, the defendant by denying it on oath, puts the plaintiff to the proof as though the act had not existed. The defendant’s oath weighs as much as the plaintiff’s, and makes up an issue between them. No mischief can be done by this proceeding. If the account is just, certainly there is noth *343 ing wrong in permitting the plaintiff to obtain judgment on his account, proven by his affidavit.
But if it be unjust, nothing is easier than to compel the plaintiff to prove it by other testimony. A denial on oath will do away all the force of the plaintiff’s affidavit. The effect of an affidavit of the plaintiff is so entirely different under this act of 1819 from that which is produced by the proof of his book under the act of 1756; and the mischiefs which the two acts were intended to remedy were so very different, that it cannot be supposed the legislature intended proceedings under this act, to be regulated and restricted by all the provisions of that law.
The limitation as to the amount to be proven, and the time within which it should be made, and the absence of all other means of proof under that act, were obviously called for, and prevent infinite mischiefs that would otherwise result.
But no mischief can be imagined, as likely to result from our construction of the act of 1819. Besides, if the act of 1819 is to be taken in pari materia with the act of 1756, the facts which a plaintiff must swear should be the same. But there is no indication that the legislature so intended, and it would have been idle to have required all the particularity which the act of 1756 prescribes in making an affidavit, and then give it no other effect than to require a defendant, if he disputes the claim, to do it on oath. Upon this view of the case it may be perceived, that as the act of 1819 does not refer to the book debt law in its terms, as its mode of operation is entirely different, as the'mischief to be remedied was of a character, that if the terms of the book debt law were to be observed, the act would in most cases fail of effecting its object, it should not be contrued in reference to that act, but should be taken to mean that which its terms import and no more.
The affidavit is in due form, and the certificate of the clerk with sufficient precision states, that Hoffman is a justice of the peace of Philadelphia county. The court below, therefore, erred in refusing to permit this account as proven, to be read to the jury.
Reverse the judgment, and remand the case for another trial.